**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

-------------------------------------------------------
|   |   |
|---|---|
| : |   |
| George Riley, et. al, | : |
| : |   |
|    Plaintiffs, | : |  Civ. No. 06-0331 (DRD) |
| : |   |
|        v. | : |
| : |   |
| Devon Brown, et. al, | : |  **O P I N I O N** |
| : |   |
|    Defendants. | : |
| : |   |

-------------------------------------------------------

George Riley
James J. Krivacska
Paul Cornwell
Vincent Macrina
William F. Vansciver
Richard A. Gibbs
Peter Braun
ADULT DIAGNOSTIC & TREATMENT CENTER
8 Production Way
Avenel, NJ 07001

*Pro se Plaintiffs*


Zulima V. Farber
Attorney General of New Jersey
Victoria L. Kuhn
Deputy Attorney General
Susan M. Scott
Deputy Attorney General
R.J. Hughes Justice Complex
P.O. Box 112
Trenton, New Jersey 08625

*Potential Attorneys for State Defendants Devon Brown and William Plantier*

1

**DEBEVOISE, Senior District Judge**

Plaintiffs, George Riley, James J. Krivacska, Paul Cornwell, Vincent Macrina, William F. Vansciver, Richard A. Gibbs, and Peter Braun, who are state inmates currently housed in the Adult Diagnostic and Treatment Center ("ADTC") in Avenel, New Jersey, filed a complaint against Defendants, Devon Brown, Commissioner of the New Jersey Department of Corrections ("DOC"), William Plantier, Director of Operations for the DOC, and various John Does, employees of the DOC, claiming that Defendants denied them certain constitutional rights and unlawfully discriminated against them by failing to protect them from other state inmates during visits to other facilities for medical treatment and legal proceedings. The factual allegations of the complaint are supported by affidavits which have not been denied by counter affidavits.

Specifically, Plaintiffs' complaint lists the following counts: (1) violation of the Fourteenth Amendment right to substantive and procedural due process; (2) violation of the Fourteenth Amendment right of equal protection; (3) violation of the First Amendment right to seek redress and to have access to the courts; (4) violation the New Jersey Law Against Discrimination ("NJLAD") and the Americans with Disabilities Act; and (5) violation of the Eighth Amendment protection against cruel and unusual punishment.

Plaintiffs assert those claims on behalf of all inmates currently held at ADTC and wish to have their complaint certified as a class action. Plaintiffs now move for a temporary restraining order and/or preliminary injunction to enjoin Defendants from engaging in any further violations. Plaintiffs also move for appointment of pro bono counsel.

## I. BACKGROUND

2

ADTC is a facility operated by the DOC for the detention and treatment of inmates who have been convicted of sexual offenses and found to be compulsive and repetitive in their offending behavior.  Plaintiffs allege that prisoners such as themselves, who have been convicted of sexual offenses, are the most despised and reviled inmates in the prison system.  As such, Plaintiffs allege that they are harassed and physically assaulted by other state inmates whenever they are exposed to those inmates, such as when they are transported to and detained in other facilities (e.g., when they seek medical care at another prison or attend a legal proceeding).  As Plaintiffs wish to represent a class of inmates they state that each member of the class has suffered from the violations alleged in the complaint.  In addition, each named Plaintiff alleges facts specific to his own experience.

**Claims of Plaintiff Paul Cornwell**

Mr. Cornwell alleges that he was transported from ADTC to the New Jersey State Prison ("NJSP") on May 24, 2005 to receive physical therapy for a herniated disc.  After receiving medical treatment he was transported to the Garden State Correctional Facility and placed in a holding area with another ADTC inmate, Zhi-men Chen, and approximately twelve other state prisoners for a period of about three hours.

Mr. Cornwell alleges that when he and Mr. Chen were placed in the holding area, one of the two corrections officers announced to the other prisoners that Mr. Cornwell and Mr. Chen were from Avenel, implying that they were sex offenders.  The two officers then allegedly stood outside a Plexiglass window and observed the events that followed.

According to Mr. Cornwell, the other inmates began asking him and Mr. Chen questions.

They first asked Mr. Chen where he was from and Mr. Chen responded that he was from ADTC. To that, another inmate said, "I know that place; that's where all the rapists go."  After several other questions another inmate allegedly asked Mr. Cornwell, "what did you do, rape a little girl?"  The inmate then allegedly stood up and began yelling, accusing Mr. Cornwell of raping a little girl.  The inmate then allegedly sat down next to Mr. Cornwell and punched him in the chest.  He then allegedly demanded the gold chain and cross that Mr. Cornwell was wearing.  Mr. Cornwell says that he replied, "I'm not giving you my fucking chain."

The inmate then allegedly stood up and offered Mr. Cornwell an outstreched hand, saying "I'm sorry."  When Mr. Cornwell shook the inmate's hand, the inmate allegedly pulled Mr. Cornwell forward and punched him in the left temple, knocking him to the floor and knocking him unconscious.

Mr. Cornwell alleges that he was assaulted while he was unconscious and that when he awoke he had a large abrasion on his right arm and that the officers, still standing on the other side of the Plexiglass, had not responded.  Mr. Cornwell alleges that Mr. Chen gave a statement in which he said that after Mr. Cornwell was knocked out, the assault continued for several minutes and that Mr. Cornwell was "pummeled with fists and kicked with feet about his body while he was unconscious and defenseless" and yet the officers did nothing to stop the assault. Mr. Cornwell was then allegedly taken to the infirmary and given a bag of ice for his head.

After returning to ADTC Mr. Cornwell allegedly reported the incident to Sergeant Collins and was then examined by a nurse.  Mr. Cornwell alleges that his injuries included head injuries leading to dizziness and loss of consciousness, severe swelling in his face, and injuries to his

right arm that eventually required surgery.  He says he was hospitalized for a total of 55 days and

has a permanent scar on his right arm because of the assault.  He further alleges that he suffered

severe psychological symptoms and that he was diagnosed as having post-traumatic stress

disorder resulting from the assault.

Mr. Cornwell further alleges that since the attack he has declined medical treatment

because he is afraid of suffering another attack.  He says he filed a grievance with the DOC

regarding the May 24th incident but that the DOC rejected it.  He also says that he filed a Tort

Claim Notice against the DOC but that it was denied.  As such, he says the DOC has been

deliberately indifferent to the risk of future attacks.

**Claims of Plaintiff Peter Braun**

Plaintiff, Peter Braun, alleges that he was assaulted by a state inmate from another facility

when he was returning from a court hearing at the Union County Courthouse on December 13,

2005.  Specifically, Mr. Braun alleges that he was driven past the ADTC facility in Avenel to

Bordentown, in Mercer County, where he was transferred to a van in the parking lot of the

Garden State Youth Correctional Facility.  Mr. Braun further states that he was placed in the back

seat of the van next to two state inmates from another facility, even though the front row of seats

in the van's inmate compartment was empty.

Mr. Braun alleges that for the next hour and forty minutes, while the van drove to

Northern State Prison in Newark, he was "subjected to a barrage of harassment, intimidation,

physical assault and psychological torture."  (Compl. ¶ 142).  Specifically, Mr. Braun alleges that

one of the other prisoners grabbed him, shoved his fist at him, threatened to punch and shank

him, and pulled on his collar and sleeves looking for jewelry and a watch.  Mr. Braun alleges that

the inmate told him that the "'cops ain't going to help you, they set you up and told us to have

fun with you.'"  (Compl. ¶ 144).  In addition, the other inmate allegedly told Mr. Braun that the

DOC officers told the inmates that he was from ADTC and was a convicted sex offender.  Mr.

Braun further states that the two other inmates then threatened to torture, kill and rape him.

Finally, Mr. Braun says the DOC officers could see and hear everything that occurred and that

they were laughing and making jokes about the threats and harassment.

Mr. Braun states that he requires frequent transport for both medical treatment and court

hearings.  He says the assault on December 13th left him severely distraught and afraid of making

future trips in DOC custody.

Mr. Braun alleges that he filed an ARF on December 22, 2005, asking to be segregated on

future trips.  He says that he has not received any response to the ARF.

**Claims of Plaintiff George Riley**

Plaintiff, George Riley, alleges the following:  He is Chairman of the ADTC Legal

Subcommittee to the Inmate Resident Committee.  In that capacity, and on his own behalf, he

wrote to Grace Rogers, ADTC Administrator, to request that procedures be put in place to protect

ADTC inmates from other state prisoners when they are transported.  Bernard Goodwin,

Associate Administrator, responded with a letter telling Mr. Riley that only the DOC Central

Office, not ADTC, had authority to change the procedures in question.  Thus, Mr. Riley wrote to

Defendant, William Plantier, Director of Operations for the DOC, and repeated his request.  He

has not received a response from Mr. Plantier.

6

Mr. Riley does not allege that he has ever been personally assaulted by other state inmates.  However, he says he is aware of such assaults on ADTC inmates and fears that Defendants' failure to prevent such attacks presents an imminent risk to his health and safety as he will need the DOC to transport him for court appearances and medical treatment in the near future.

## Claims of Plaintiff James J. Krivacska

Plaintiff, James J. Krivacska, like Mr. Riley, does not allege that he has ever been personally assaulted by other state inmates.  On the contrary, Mr. Krivacska describes his May 31, 2005 visit to NJSP that transpired without incident.  Presumably, his account serves as an example of how Plaintiffs wish to be transported as Mr. Krivacska describes being segregated from other inmates at all times and says that DOC officers protected him from other inmates and took precautions to conceal his identity as an ADTC inmate.

Despite that positive experience, Mr. Krivacska alleges that he is afraid of future trips, either for medical care or court proceedings, because of what happened to Mr. Cornwell on May 24, 2005.  Mr. Krivacska alleges that he filed an Administrative Remedy Form ("ARF") expressing his concern regarding the assault on Mr. Cornwell and indicating his fear of making future trips for medical care and court proceedings.

Mr. Goodwin allegedly responded to the ARF with the same explanation he gave to Mr. Riley, i.e., that ADTC had no authority to change transport procedures.  Mr. Krivacska alleges that he appealed Mr. Goodwin's decision to no avail.

## Claims of Plaintiff Vincent Macrina

Plaintiff, Vincent Macrina, does not claim to have been assaulted but says that on one occasion he was placed in a large holding cell with other state inmates while awaiting medical treatment.  As he alleges that he suffers from several serious medical conditions he says he needs frequent medical attention but turns it down because he is afraid of being assaulted by other state inmates during the transport process.

**Claims of Plaintiff William F. Vansciver**

Plaintiff, William F. Vansciver, does not claim to have been assaulted but says that on various occasions, when being transported for medical purposes, DOC officers identified him as an ADTC inmate to other state inmates, thereby putting him at risk of assault.  Mr. Vansciver alleges that he suffers from serious medical conditions and needs frequent medical attention. However, he states that he has declined medical attention because of the risk involved in seeking such attention.

**Claims of Plaintiff Richard Gibbs**

Plaintiff, Richard Gibbs, does not claim to have been assaulted but says he is aware of the attack on Mr. Cornwell and assault of Mr. Braun.  Although he wishes to attend court hearings connected with his post-conviction relief hearing, he says he is afraid to attend because of the risk involved in being transported to the hearings.

**Assault of Todd Becka**

In addition to the above allegations Plaintiffs describe an attack on a former ADTC inmate, Todd Becka that allegedly occurred on July 20, 2004.  Mr. Becka, according to Plaintiffs' allegations, was threatened and attacked by an inmate from another facility while in transport to

receive medical attention.  The details of Plaintiffs' allegations are drawn from a complaint that

Mr. Becka filed with the ADTC administration.  Plaintiffs state that Mr. Becka was punched in

the head and subjected to repeated threats of violence and that the DOC officers who were

present at the time did nothing to protect him.

Plaintiffs claim to know of other ADTC inmates who have suffered verbal and physical

abuse from inmates of other facilities while on medical or court trips but do not describe any of

those incidents.

## II.  DISCUSSION

### Standard of Review for a Temporary Restraining Order/Preliminary Injunction

A preliminary injunction "is 'an extraordinary remedy, which should be granted only in

limited circumstances.'" Novartis Consumer Health, Inc. v. Johnson & Johnson, 290 F.3d 578,

586 (3d Cir. 2002) (quoting Instant Air Freight Co. v. C.F. Air Freight, Inc., 882 F.2d 797, 800

(3d Cir. 1989)).  "[T]he movant, *by a clear showing*, carries the burden of persuasion."  Mazurek

v. Armstrong, 520 U.S. 968, 972 (1997).  Moreover, "[a] preliminary injunction cannot be issued

when there are disputed issues of fact.  Hunterdon Transformer Co. v. Cook, No. 89-3132, 1990

U.S. Dist. LEXIS 1382, at *4 (D.N.J. Feb. 6, 1990).

> To obtain an injunction, [a movant must] demonstrate (1) that [it is] reasonably likely to
> prevail eventually in the litigation and (2) that [it is] likely to suffer irreparable injury
> without relief.  If these two threshold showings are made the District Court then
> considers, to the extent relevant, (3) whether an injunction would harm [the non-movant]
> more than denying relief would harm the [movant] and (4) whether granting relief would
> serve the public interest.

Tenafly Eruv Ass'n, Inc. v. Borough of Tenafly, 309 F.3d 144, 157 (3d Cir. 2002).  Specifically,

with respect to the second part of the analysis, "[t]o obtain injunctive relief, a party must make a clear showing of 'immediate irreparable injury' or a 'presently existing actual threat.'" Marsellis-Warner Corp. v. Rabens, 51 F. Supp. 2d 508, 528 (D.N.J. 1999) (quoting Acierno v. New Castle County, 40 F.3d 645, 655 (3d Cir. 1994)).

**1.  Likelihood of success on the merits**

For a moving party to demonstrate a reasonable likelihood of ultimate success in the litigation "it is not necessary that the moving party's right to a final decision after trial be wholly without doubt; rather, the burden is on the party seeking relief to make a prima facie case showing a reasonable probability that it will prevail on the merits."  Oburn v. Shapp, 521 F.2d 142, 148 (3d Cir. 1975).  Thus, for Plaintiffs to satisfy their burden they must establish a prima facie case for at least one of their claims.

A.  Eighth Amendment Protection Against Cruel and Unusual Punishment

The Eighth Amendment's ban on inflicting cruel and unusual punishments . . . '[proscribes] more than physically barbarous punishments.'  It prohibits penalties that are grossly disproportionate to the offense, as well as those that transgress today's 'broad and idealistic concepts of dignity, civilized standards, humanity, and decency.'"  Hutto v. Finney, 437 U.S. 678, 685 (U.S. 1978).

"It is undisputed that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment."  Helling v. McKinney, 509 U.S. 25, 31 (U.S. 1993).  "'When the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume

some responsibility for his safety and general well being . . . .'" Id. at 32.  As such, "[t]he Eighth Amendment . . . requires that inmates be furnished with the basic human needs," including medical care and a reasonably safe environment.  Id. at 33.

The Supreme Court has further stated that prison officials have an obligation to not only protect inmates from immediate harms but to also protect them from "condition[s] of confinement that [are] sure or very likely to cause serious illness and needless suffering [in] the next week or month or year." Id. at 33.  With regard to claims of unsafe conditions, the Court said that "a prisoner need not wait until he is actually assaulted before obtaining relief."  Id. at 34 (citing Ramos v. Lamm, 639 F.2d 559, 572 (10th Cir. 1980).  Thus, "the Eighth Amendment protects against sufficiently imminent dangers as well as current unnecessary and wanton infliction of pain and suffering . . . ."  Id.

To prove a cause of action against a prison official for the deprivation of basic necessities a prisoner must satisfy a two prong test.  First, the prisoner must show that the alleged deprivation is, "objectively, 'sufficiently serious'[and that the] prison official's act or omission . . . result[ed] in the denial of 'the minimal civilized measure of life's necessities[.]'  For a claim . . . based on a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm."  Farmer v. Brennan, 511 U.S. 825, 834 (1994).

Second, the prisoner must show that the prison official acted with "a 'sufficiently culpable state of mind.'  In prison-conditions cases that state of mind is one of 'deliberate indifference' to inmate health or safety . . . ."  Id.  Deliberate indifference exists where a prison "official knows of and disregards an excessive risk to inmate health or safety . . . ."  Id. at 837.

11

Furthermore, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and . . . must also draw the inference." Id. However, a prisoner "need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." Id. at 842.

In claims against prison supervisors, the above standard is modified, requiring an inmate to prove, in addition to the above elements, that his injury was caused by a supervisor's failure to establish or enforce appropriate policies or practices.

> Supervisor-centered claims against prison officials are analyzed under the four-prong test set forth in Sample v. Diecks, 885 F.2d 1099 (3d Cir. 1989). Under the Sample test, to hold a supervisor liable because his policies or practices led to an Eighth Amendment violation, the plaintiff must identify a specific policy or practice that the supervisor failed to employ and show that: (1) the existing policy or practice created an unreasonable risk of the Eighth Amendment injury; (2) the supervisor was aware that the unreasonable risk was created; (3) the supervisor was indifferent to that risk; and (4) the injury resulted from the policy or practice.

Liles v. Camden County Dep't of Corr., 225 F. Supp. 2d 450, 463 (D.N.J. 2002).  Prison supervisors may not be held responsible under a respondeat superior theory of liability.

Dempsky v. Walker, No. 05-4483, 2005 U.S. Dist. LEXIS 22983, at *12 (D.N.J. Sept. 29, 2005).

In the present case, Plaintiffs claim they suffered injuries and are likely to suffer further injuries due to Defendants' failure to protect them from other state inmates.  Plaintiffs allege that Defendants' practice of identifying them as sex offenders and refusing to separate them from other state inmates when they place them in vehicles and holding cells with such inmates creates an unreasonable risk that they will be assaulted by those inmates.  Moreover, Plaintiffs allege that the risk of assault has prevented them from seeking necessary medical care.

With regard to the first element in the above test, Plaintiffs can show that Defendants'
practice created an unreasonable risk by presenting "evidence that such harm has in fact occurred
on numerous occasions."  Sample v. Diecks, 885 F.2d 1099, 1118 (3d Cir. 1989).  In Liles, 225
F. Supp. at 462, two inmates brought a cruel and unusual punishment claim against DOC
supervisors and employees alleging that the defendants' policy of having some inmates sleep on
mattresses on the floor of their cells, near the toilet, such that they were splashed with urine when
other inmates used the toilet, led to several fights breaking out between inmates.  Plaintiffs
alleged that the condition led to one of the plaintiffs having a fight with another inmate on one
occasion and the other plaintiff having fights on at least two occasions.  Id.  The court said that
those "incidents establish[ed] a pattern of violence" and that such allegations raised a question of
fact, sufficient to survive summary judgment, as to whether the condition "constituted a threat to
the health and safety of [the plaintiffs] that violated the Eighth Amendment."  Id.

In the present case, Plaintiffs allege that prison officials engage in a practice of
identifying them as sex offenders, placing them in close proximity to other state inmates, and
failing to protect them from assaults by those inmates.  As evidence of that practice, Plaintiffs
offer detailed accounts of three separate violent attacks: one on Plaintiff Cornwell, one on
Plaintiff Braun, and one on former inmate Becka.  Moreover, due to those assaults, Plaintiffs
allege that they are afraid to seek medical care because they cannot do so without risking physical
injury.  Such conditions "transgress today's 'broad and idealistic concepts of dignity, civilized
standards, humanity, and decency.'"  Hutto, 437 U.S. at 685.  No member of society should be
subjected to violent attack nor should anyone have to risk such an attack to receive medical care.
Thus, Plaintiffs have established a pattern of violence that constitutes an unreasonable risk to

their Eighth Amendment rights.  They have therefore satisfied their burden under the first element of the above test.

With regard to the second element, Plaintiffs say they notified various prison officials of the unsafe condition.  Specifically:

!    Mr. Riley allegedly wrote a letter to Ms. Rogers asking for better protection during transportation.  Mr. Goodwin allegedly responded to that letter stating that ADTC administrators could not do anything to alter current procedures and that only the DOC Central Office had authority over such matters.  Thus, Mr. Riley says he wrote to Mr. Plantier, Director of Operations for the DOC, requesting greater protection.  Mr. Riley says he has received no response to that letter.

!    Mr. Cornwell allegedly filed a grievance with the DOC and a Tort Claim Notice against the DOC regarding his alleged assault but says both were denied.  In addition, Mr. Cornwell says he reported the incident to Sergeant Collins and was hospitalized for fifty five days.

!    Mr. Krivacska allegedly filed an ARF expressing his concern over the assault on Mr. Cornwell but says that Mr. Goodwin responded with the same explanation he gave to Mr. Riley.

!    Mr. Braun allegedly filed an ARF asking to be segregated on medical trips but says he has not received any response.

!    Mr. Becka allegedly filed a complaint with the ADTC administration regarding the assault he suffered.

Of the above notifications, Mr. Riley's letter to Mr. Plantier is the only evidence that

14

could prove that either of the named Defendants had actual knowledge of the alleged dangerous condition but there is no proof that Mr. Plantier actually read the letter.  However, Mr. Goodwin's responses to both Mr. Riley and Mr. Krivacska show that Mr. Goodwin had actual knowledge of the condition.  Although Mr. Goodwin is not named as a defendant, Plaintiffs' complaint alleges claims against John Does, DOC employees.  Thus, Plaintiffs' allegations are sufficient to satisfy Plaintiffs' burden of showing that a defendant supervisor was aware of the unreasonable risk created under the existing transport procedures.

In addition, Plaintiffs' other letters, complaints, Administrative Remedy Forms and allegation that Mr. Cornwell spent fifty five days in the hospital, which suggests that prison officials must have known of his assault, tend to show that other prison officials were also aware of the unsafe condition.  As stated in Liles, "[a] defendant's knowledge of a risk can be proved indirectly by circumstantial evidence . . . ."  Id. at 463.  Plaintiffs' allegations show that other prison officials, in addition to Mr. Goodwin, likely knew of the unsafe condition as well.

As to the third element, Plaintiffs claim that prison supervisors have acted with deliberate indifference in that they have failed to correct the unsafe condition.  Mr. Goodwin allegedly stated that ADTC has no authority to change the procedures by which prisoners are transported.  However, that explanation does not relieve Mr. Goodwin of his duty to protect ADTC inmates when he knows they are being subjected to cruel and unusual punishment.  As stated above, prison officials have an affirmative duty to protect inmates from immediate threats as well as conditions that are likely to cause harm in the future.  Mr. Goodwin's knowledge of the unsafe condition and his failure to correct it, or even attempt to correct it, show that he knew of, and disregarded an excessive risk to inmate health and safety.  Thus, Plaintiffs have satisfied their

15

burden for the third element.

Regarding the fourth element, Plaintiffs' past injuries and the likelihood of future injuries arise from prison officials' current practice of telling other state inmates that Plaintiffs are sex offenders when they put Plaintiffs in vehicles and holding cells with those inmates.  Thus, Plaintiffs have satisfied their burden as to this element as well.

As Plaintiffs have satisfied their burden under all four of the above elements, they have succeeded in establishing a prima facie case showing a reasonable probability that they will prevail on the merits with regard to their claim of cruel and unusual punishment against Mr. Goodwin.  As it seems likely that other prison officials were also aware of, and disregarded, the unsafe condition, it is probable that Plaintiffs will prevail in their claims against other officials as well.

In addition to their Eighth Amendment claim, Plaintiffs' complaint lists four other causes of action.  The merits of those claims need not be analyzed at the present time as Plaintiffs have shown a likelihood of success on a claim that will entitle them to the requested relief if they succeed in establishing the remaining elements in the preliminary injunction analysis.

**Likelihood of suffering irreparable injury**

"The Third Circuit has interpreted 'irreparable harm' to mean 'that which cannot be repaired, retrieved, put down again [or] atoned for.'" Monmouth County Correctional Institution Inmates v. Lanzaro, 643 F. Supp. 1217, 1228 (D.N.J. 1986).  "In order to demonstrate irreparable harm the plaintiff must demonstrate potential harm [that] cannot be redressed by a legal or an equitable remedy following a trial." Forchion v. Intensive Supervised Parole, 240 F. Supp. 2d 302, 310 (D.N.J. 2003).

In the present case, Plaintiffs' allegations that Mr. Cornwell, Mr. Braun, and Mr Becka, were assaulted due to the practice described above, along with their allegations that said practice still occurs, establish a likelihood that Plaintiffs will be assaulted again if an injunction is not issued.  In addition, the allegation that Plaintiffs cannot, in some instances, receive medical care without risking physical injury, shows that Plaintiffs will, effectively, be denied medical care if an injunction is not issued.

In Monmouth County, the court granted the plaintiff-inmates' application for a preliminary injunction against prison officials where the officials enforced a policy of requiring a court ordered release and refusing to provide funding (in violation of a statute) for abortions.  643 F. Supp. at 1229.  In finding that the defendants' policy substantially delayed the plaintiffs' access to the procedure, the court stated the following:

> It is well-accepted that a substantial delay in the decision to abort increases the risks associated with the procedure . . . .  "The enhanced risks of an abortion delayed to the second trimester are of such nature and magnitude that, even though abortion remains lawfully available, the parent is effectively 'denied a meaningful opportunity' to decide whether the fetus should be aborted."

Id. at 1228.  The court found that the plaintiffs had "adequately established the requisite irreparable injury."  Id.

That case is similar to the present case in that Plaintiffs, like the plaintiffs in Monmouth County, are "effectively denied" access to medical care because of the risk involved in receiving such care.  Thus, Plaintiffs are not, as Defendants claim, refusing to receive medical care.  Rather, medical care has been effectively denied because of the risk involved.

However, Defendants cite Board of Education v. New Jersey Education Ass'n., 96 N.J. Super. 371, 390-91 (N.J. Super. Ct. 1967) for the proposition that "[h]arm is not irreparable

17

unless it results in a material injury for which monetary damages are inadequate." (Def's' Br. 17). But the discussion in that case does not relate to physical injury. Courts have frequently found that an injunction is the appropriate remedy where a plaintiff's health or well-being is threatened. See e.g., Boone v. Brown, No. 05-750, 2005 U.S. Dist. LEXIS 18131 (D.N.J. Aug. 22, 2005); Hutto v. Finney, 437 U.S. 678 (U.S. 1978); Gates v. Collier, 501 F.2d 1291 (5th Cir. 1974).

Finally, Defendants argue that Plaintiffs have failed to prove irreparable harm "since four of [them] have never been so much as verbally harassed" and the others "have failed to show that . . . [injury] is 'virtually certain.'" (Def's' Br. 17). But in Helling, the Supreme Court stated:

> It would be odd to deny an injunction to inmates who plainly proved an unsafe, life-threatening condition in their prison on the ground that nothing yet had happened to them . . . . [Furthermore,] a remedy for unsafe conditions need not await a tragic event.

In the present case, Plaintiffs have plainly established an unsafe condition that could be life threatening in the event that one of them is brutally attacked, as was Mr. Cornwell, or effectively denied medical care for a serious illness or injury. Thus, Plaintiffs have sufficiently established a likelihood of irreparable injury.

**Harm imposed on Defendants**

Generally, an injunction should not be issued if it will harm the non-moving party more than the moving party would be harmed if relief was denied. Defendants state two specific harms that will result if Plaintiff's motion is granted. First, they say the injunction will undermine the DOC's discretion to establish transportation procedures. Such a harm seems insignificant when compared to the constitutional violations that Plaintiffs allege.

Second, Defendants argue that granting the injunction will invalidate a state law, N.J.S.A.

18

2C:47-3(h), that allows the DOC to house certain sex offenders in the same facility as other inmates.  Presumably, an injunction that imposes upon the DOC an obligation to keep ADTC inmates separate from other state inmates could be read as imposing upon it an obligation to segregate all sex offenders from other state inmates.  However, a properly tailored injunction could provide Plaintiffs with adequate protection without imposing such an obligation on the Defendants.  Thus, Defendants' alleged harms do not outweigh the harms allegedly imposed on Plaintiffs.

**Public interest**

There is no doubt that society has an interest in protecting all of its members, including those incarcerated for sex-offenses, from cruel and unusual punishment.

**Other relief**

Plaintiffs seek to proceed as a class action and for the appointment of an attorney to represent the class.  A ruling on those applications will be deferred in the expectation that the prison authorities, in conformity with the preliminary injunction to be issued herewith, or as appropriately modified from time to time, will take all necessary actions to provide effective relief.  Failing that, attorneys can be appointed to move for class designation and represent the class as appropriate.

## CONCLUSION

For the reasons set forth above, Plaintiff's motion for a preliminary injunction is granted. Defendants, Devon Brown and William Plantier and all those operating under their direction and control will be preliminarily enjoined, directed and ordered as follows:

1.      When inmates are removed from ADTC and held or transported with inmates from other

correctional institutions: i) they shall not be identified as inmates of Avenel; ii) inmates from other correctional institutions shall not be confined either in a vehicle or holding area so as to have physical access to the Avenel inmates unless a guard is present who is able to prevent the Avenel inmates from being subjected to violence from other inmates; iii) guards and other prison officials shall be directed to halt forthwith any verbal or physical assaults made by inmates upon Avenel inmates; iv) prison authorities shall investigate and promptly report upon any violence committed against any Avenel inmates;

2.   Defendants and Plaintiffs may apply to the Court for any modification of the accompanying order that may be necessary to accommodate prison administration or may be necessary to effectuate its purpose of protecting Avenel inmates from physical and other abuse.

3.   A ruling on Plaintiffs' applications for class designation and appointment of an attorney will be deferred until it can be determined whether full relief can be affected through implementation of the accompanying order.


/s/ Dickinson R. Debevoise

DICKINSON R. DEBEVOISE, U.S.S.D.J.

Dated:        March 16, 2006

20